UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RICHARD COOPER,

    Petitioner,

v.                                              CASE NO. 8:04-CV-1447-T-27EAJ

WALTER A. MCNEIL, Secretary,
Florida Department of Corrections,

    Respondent.
_____/

## ORDER

**BEFORE THE COURT** Petitioner's Notice of Appeal (Dkt. 75), Petitioner's Motion for Certificate of Appealability to the United States Court of Appeals (Dkt. 76), and Petitioner's Motion to Appeal *In Forma Pauperis* (Dkt. 77).

A certificate of appealability is "a threshold or gateway requirement which serves to filter out from the appellate process cases in which the possibility of reversal is too unlikely to justify the cost to the system of a full appellate examination." *Gonzalez v. Secretary for Dept. of Corrections,* 366 F.3d 1253, 1264 (11th Cir. 2004). In this case, the issues for which Petitioner seeks a certificate of appealability were denied on the merits. While Petitioner is not required to show that his appeal will succeed, *see Miller-El v. Cockrell,* 537 U.S. 322, 336-37 (2003), under the controlling standard, Petitioner must demonstrate that reasonable jurists would find this Court's assessment of his constitutional claims debatable or wrong. *See Slack v. McDaniel,* 529 U.S. 473, 484 (2000); *Eagle v. Linahan,* 279 F.3d 926, 935 (11th Cir. 2001); *Muhammad v. Secretary, Dept. of Corrections,* 554 F.3d 949, 954-55 (11th Cir. 2009)("A petitioner satisfies this standard by demonstrating that jurists

of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.") (quoting *Miller-El v. Cockrell*, 537 U.S. at 326).

The relevant inquiry therefore is whether jurists of reason would debate the conclusions reached by this Court on the issues. *Id.* Said another way, the inquiry is whether "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Gonzalez v. Secretary for Dept. of Corrections*, 366 F.3d 1253, 1267 (11th Cir. 2004) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4, (1983)).

Petitioner identifies eight specific claims for which he seeks a certificate of appealability. Petitioner also "respectively requests a COA on each claim he has pleaded." This generalized request essentially seeks a "blanket" COA, which would be inconsistent with the statutory provision governing the issuance of COAs. *See Thomas v. Gibson,* 218 F.3d 1213, n.1 (10th Cir. 2000). A COA must indicate which specific issues satisfy the requisite statutory criteria for issuance of a COA. 28 U.S.C. § 2253(c)(3). To the extent, therefore, Petitioner seeks a COA on issues not specifically discussed in the motion, the request is DENIED.

**Ground A(d)**: A COA is GRANTED on the issue of whether trial counsels' deficient mitigation investigation prejudiced Petitioner. Reasonable jurists could debate the conclusion reached by this Court that Petitioner did not establish prejudice resulting from the deficient mitigation investigation of his trial attorneys. This issue of ineffective assistance of counsel is discussed at pages 48-81 of the Order denying relief. (Dkt. 69).

**Grounds B & C:** A COA is DENIED on Petitioner's *Brady/Henry* claims. The state post conviction court held extensive hearings on these issues. The Florida Supreme Court reviewed and affirmed the state post conviction court's resolution of these claims, making factual findings which Petitioner has not rebutted by clear and convincing evidence. Neither has Petitioner shown that the Florida Supreme Court's determination was either an unreasonable application of Supreme Court precedent or an unreasonable determination of the facts. Reasonable jurists would not debate this Court's determination in this regard.

To the extent Petitioner seeks "an evidentiary hearing, or at the very least, further discovery," Petitioner did not meet his burden of showing that the state court evidentiary hearings were not full and fair and that further evidentiary proceedings are necessary. These issues are exhaustively discussed in the order denying relief at pages 101-120. Reasonable jurists would not debate this Court's determination that further evidentiary proceedings are necessary.

As presented, Grounds B and C are related. The essence of these claims is that State witness Skalnik, acting as a de facto agent for local law enforcement, induced Petitioner to make inculpatory statements about the murders in violation of Petitioner's Sixth Amendment right to counsel (Ground C) and that the state suppressed eight boxes of documents bearing on Skalnik's credibility and status as an agent of law enforcement (Ground B).

Petitioner contends that shortly after his transfer into the Pinellas County jail after being charged with the murders, he was intentionally placed in a cell with Skalnik for the purposes of Skalnik gaining access to Petitioner and inducing him to make incriminating statements in violation of *United States v. Henry,* 447 U.S. 264 (1980). Skalnik, a former law enforcement officer, had a history of cooperating with and assisting prosecutors by gaining the confidence of defendants

3

charged in capital cases and extracting incriminating statements from them. During the state court proceedings, eight boxes of documents related to Skalnik's cooperation with authorities, which had not been made available to Petitioner's attorneys, became the focus of Petitioner's contention that the State had suppressed favorable evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

During Petitioner's state post conviction proceedings, lengthy evidentiary hearings were conducted on these claims, during which Skalnik, Douglas Crow, who was one of Petitioner's prosecutors, and Koch, Petitioner's trial attorney, testified. The eight boxes of documents were reviewed *in camera* by the state post conviction court. That court essentially found that there was no *Brady* violation and that the eight boxes were exempt from disclosure under Florida's Public records Act. Considering Koch's knowledge of Skalnik's informant activities, the court, assuming there had been a *Brady* violation, reasoned that Petitioner had not shown a reasonable probability that the outcome would have been different if the materials had been disclosed. The Florida Supreme Court affirmed, agreeing with the trial court that the eight boxes were exempt from disclosure under Florida law. Further, the Florida Supreme Court found that "there is a dearth of evidence in the record to suggest that Skalnik ever received anything of value from the State," and that the "only indication that Skalnik ever received anything of value is offered in the form of pure speculation." *Cooper v. State*, 856 So.2d 969, 973-74 (Fla. 2003). The relevant excerpt from the Florida Supreme Court's opinion bears repeating:

> ... [Petitioner] contends that despite repeated requests pursuant to chapter 119 of the Florida Statutes, the State has failed to provide him with public records relating to the various instances in which Skalnik has testified for the State. Because the State has neither furnished the documents to him nor stated specific reasons why the material is exempted from disclosure, Cooper requests that this Court order the State to comply. Our examination of the record on appeal belies Cooper's assertions. As mandated by chapter 119, the State detailed the statutory exemptions it relied upon

to shield certain documents, and provided the entirety of the materials to the court below for in-camera review. The trial court reviewed the records, and concluded that the State's assertions regarding the exempt status of the documents were well founded. The trial court did not err. Indeed, Cooper makes no claim that he has not been fully and exhaustively informed regarding Skalnik's background as a State's witness. Because the sole purpose for which Cooper seeks examination of these records is to research Skalnik's background, we can discern no scenario in which the limitation upon Cooper's access to these documents hampered his attorneys' postconviction discovery efforts.

*Cooper v. State*, 856 So. 2d at 974.

The eight boxes and Petitioner's *Brady/Henry* claims were the subject of particularized attention during the federal habeas proceedings. Respondent was ordered to make the eight boxes available to Petitioner's attorneys (Dkts. 26, 28). The parties were directed to file supplemental briefs on Petitioner's *Brady* and *Massiah/Henry* claims, and the necessity of further evidentiary proceedings, after reviewing the contents of the eight boxes (Dkt. 48). Petitioner was expressly directed to proffer those documents discovered in the eight boxes which supported his contentions (Dkt. 52).

Petitioner attached nearly 300 pages of documents to his supplemental brief (Dkt. 53). During oral argument, Petitioner's counsel directed this Court's attention to portions of five specific documents, which he contended demonstrated Skalnik's agency relationship with the State. As discussed in the order denying relief, counsel conceded during argument that all of the documents were of unknown origin and most, if not all, had been created after Petitioner's trial (Dkt. 69, at p. 113). Petitioner proffered no evidence that any law enforcement officer or prosecutor directed Skalnik to question Petitioner or take statements from him. *Id.* Essentially, the documents Petitioner relied on merely corroborated what Koch already knew, that Skalnik was a frequent informant who testified and assisted the State in prosecuting fellow inmates charged with capital offenses.

Petitioner did not carry his burden of establishing the need for an evidentiary hearing, including his claim that the extensive state court post conviction hearings were not full and fair.

In the instant motion for a COA, Petitioner expands on his argument that the documents in the eight boxes support his *Brady* and H*enry* claims. Like the earlier arguments, much of the expanded argument is pure conjecture, including Petitioner's contention that certain notations "reflect the prosecution's intent to hide this information." (Dkt. 76, at p. 5). Moreover, most of the documents and notations Petitioner interprets on can be characterized as impeachment material, similar to the documents Petitioner's counsel relied on during oral argument. They shed little additional light on Skalnik's cooperation than did the original proffer. The state court cases referenced by case number are matters of public record in Pinellas County. Moreoever, what occurred after Petitioner's trial has no bearing on Skalnik's posture as an informant in Petitioner's case. Most importantly, nothing in the documents establishes that Skalnik was directed by law enforcement to elicit incriminating statements from Petitioner. Further evidentiary proceedings are not warranted.

As for **Ground B**, the claimed *Brady* violation, reasonable jurists would not debate this Court's conclusion that "[t]he non-disclosure of the contents of the eight boxes of documents does not undermine confidence in Petitioner's convictions . . . [that] Petitioner fails to demonstrate a reasonable probability that if those documents had been available to the defense, and presented to the jury during the penalty phase, that the outcome [sic] would have been different." (Dkt. 69, at pp. 106-07).

As for **Ground C**, the claimed *Henry* violation, reasonable jurists would not debate this Court's conclusion that "[t]he Florida Supreme Court's determination that Petitioner failed to establish a Sixth Amendment violation amounts to neither an unreasonable application of Supreme

Court precedent or an unreasonable determination of the facts in petitioner's case." The state court findings of fact, made after extensive evidentiary hearings, are presumptively correct. Petitioner did not rebut those findings by clear and convincing evidence. Reasonable jurists would not disagree.

**Grounds A(f)(in part) and N(g):** A COA is DENIED on Petitioner's claims that trial and appellate counsel ineffectively failed to challenge statements that improperly minimized the jury's sense of responsibility. Reasonable jurists would not debate this Court's determination that Petitioner's underlying *Caldwell* claim was without merit, based on precedent from the Eleventh Circuit and the Florida Supreme Court:[1]

> Comments such as those complained of, which accurately describe the jury's role in a Florida death penalty case as advisory, do not constitute *Caldwell* error. *See Johnston v. Singletary*, 162 F.3d 630, 643-44 (11th Cir. 1998), *cert. denied*, 528 U.S. 883 (1999); *Provenzano v. Singletary*, 148 F.3d 1327, 1334 (11th Cir. 1998); *Davis v. Singletary*, 119 F.3d 1471, 1482 (11th Cir. 1997) ("[R]eferences to and descriptions of the jury's sentencing verdict in this case as an advisory one, as a recommendation to the judge, and of the judge as the final sentencing authority are not error under *Caldwell*. . . . because they accurately characterize the jury's and judge's sentencing roles under Florida law."). . . .
>
> The trial court correctly instructed the jury as to its role and responsibilities during the penalty phase . . . The Florida Supreme Court has recognized these instructions as properly describing the jury's role in Florida. *See Hodges v. Sec'y, Dep't of Corr.*, No. 8:03-cv-1591, 2007 WL 604982, at *31 (M.D. Fla. Feb. 22, 2007) (citing *Archer v. State*, 673 So. 2d 17, 21 (Fla.), *cert. denied*, 519 U.S. 876 (1996) (Florida standard jury instructions adequately describe role to jury); *Pope v. Wainwright*, 496 So. 2d 798, 805 (Fla. 1986), *cert. denied*, 480 U.S. 951 (1987)). In light of these Florida authorities, Petitioner has not demonstrated that the prosecutor mischaracterized the jury's role in the penalty phase of Petitioner's trial or diminished its role in the sentencing process. Consequently, counsel was not ineffective in failing to object to the prosecutor's comments. Moreover, the state trial court correctly instructed the jury on its role in the sentencing process. Counsel's performance was not deficient, and even if deficient, Petitioner has established no prejudice resulting from any deficiency. Petitioner has not met his burden of proving that the Florida Supreme Court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts in denying this claim. *See* 28 U.S.C. § 2254(d)(1).

---

[1] *Caldwell v. Mississippi*, 472 U.S. 320 (1985).

**Ground D:** A COA is GRANTED on Petitioner's claim that he is entitled to an evidentiary hearing on his competency to stand trial.[2] This Court determined that Petitioner did not meet his burden to "positively, unequivocally, and clearly generate legitimate doubt" about his competency at the time of trial. (Dkt. 69, at pp. 120-121). Reasonable jurists could debate this determination.

Because this ground raised a substantive competency claim, this Court applied the correct test, as articulated by the Eleventh Circuit, in determining whether Petitioner proffered sufficient evidence to entitle him to an evidentiary hearing on his claim. (Dkt. 69, at p. 120)("A petitioner who raises a substantive competency claim must demonstrate his incompetence by a preponderance of the evidence.")(citing *Johnston v. Singletary*, 162 F.3d 630, 637 (11th Cir. 1998)). This Court concluded: "Petitioner likewise fails to present evidence that he lacked the ability to communicate with counsel or understand the charges against him at the time of trial." (Dkt. 69, at p. 121).[3] This Court found that Dr. Fisher's evaluation and report did not demonstrate that Petitioner was incompetent to stand trial under this standard. (*Id.* at p. 121, n. 72.)[4]

Prior to trial, Petitioner was evaluated by Dr. Merin for, among other things, competency. Dr. Merin made no finding that Petitioner was incompetent. It follows that his attorneys had no basis

---

[2] Petitioner does not contend that the state court violated his due process rights by not affording him an adequate hearing on competency. *See Pate v. Robinson,* 383 U.S. 402 (1960). Rather, Petitioner's claim is that he was incompetent to stand trial, notwithstanding that he was evaluated by Dr. Merin and his trial attorneys did not seek a judicial determination of his competency.

[3] A defendant is competent to stand trial if "he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding-and [if] he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402 (1960).

[4] As discussed in *Medina v. Singletary*, 59 F.3d 1095, 1107 (11th Cir. 1995): "[N]ot every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges." Similarly, neither low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial. The fact that a defendant has been treated with anti-psychotic drugs does not per se render him incompetent to stand trial. (Citations omitted).

on which to request a hearing on Petitioner's competency. Accordingly, there was no state court determination of Petitioner's competency. As determined by this Court, Petitioner presented "no evidence demonstrating any inadequacy in Dr. Merin's evaluation or conclusions." *Id.* Petitioner's post trial allegations and proffer are therefore necessarily independent of Dr. Merin's evaluation. Dr. Fisher's evaluation of Petitioner was conducted in 1989, nearly five years after Petitioner's trial. Considering Dr. Merin's evaluation, Dr. Fisher's conclusions do not create "real, substantial and legitimate doubt" as to Petitioner's competency. *James v. Singletary,* 957 F.2d 1562, 1573 (11th Cir. 1992).

Petitioner's allegations of incompetence are found at page 38 of his habeas petition (Dkt. 1). Taking those allegations as true, and notwithstanding that those allegations do not on their face meet the *Dusky* standard, reasonable jurists could debate whether those allegations, together with Dr. Fisher's evaluation, satisfy Petitioner's burden and whether an evidentiary hearing on Petitioner's substantive competency claim is necessary. *See James v. Singletary,* 957 F.2d 1562, 1575 (11th Cir. 1992)(in determining whether evidentiary hearing required, allegations of actual incompetency taken as true). Accordingly, a certificate of appealability on this claim is GRANTED.

**Grounds A(a) & A(e)(in part):** A certificate of appealability on these claims is GRANTED. In these claims, Petitioner argues that his trial attorney, Ky Koch, was ineffective in his investigation and cross examination of state witness Skalnik because Koch had previously represented Skalnik and therefore operated under a conflict of interest. Prior to his representation of Petitioner, Koch filed a motion for sentence reconsideration on behalf of Skalnik, incident to Skalnik's desire to obtain a private investigator's license. This motion was filed more than two years before Petitioner's trial and was entirely unrelated to Petitioner's murder charges. In fact, before the motion was heard, Koch

9

was replaced by another attorney. According to Koch, he disclosed and discussed his prior representation of Skalnik with Petitioner, who voiced no objection to having Koch represent him.

This issue was denied on the merits, consistent with *Cuyler v. Sullivan,* 446 U.S. 335 (1980) and *Strickland v. Washington,* 466 U.S. 687 (1984). (Dkt. 69, pp. 83-95). The Florida Supreme Court, in rejecting this claim, found that Petitioner was informed of Koch's prior representation of Skalnik "and decided to proceed with Koch as his attorney without objection." Further, that court found that "Koch's brief representation of Skalnik did not prejudice Cooper's case." *Cooper v. State*, 856 So. 2d at 974-75.

This conflict of interest claim involves a successive, rather than concurrent, representation, as Koch was not, at the time he represented Petitioner, "actively representing conflicting interests." *Strickland v. Washington,* 466 U.S. at 692. As this Court noted in its order, whether the rationale of *Sullivan* applies to successive representation remains unanswered. (Dkt. 69, p. 86). Accordingly, the claim was addressed under *Sullivan* as well as *Strickland. (Id.)*. The claim was denied on the merits, as Petitioner did not demonstrate that the Florida Supreme Court's decision was a misapplication of *Sullivan* or otherwise "contrary to" established Supreme Court precedent. (Dkt. 69, p. 88).

Koch's prior representation of the State's primary penalty phase witness, Skalnik, did, however, give this Court "pause." *Id.* Petitioner contends that Koch limited the temporal scope of his cross examination of Skalnik relative to his cooperation with the authorities to the time period after his representation of Skalnik. Koch acknowledged that he limited his cross examination of Skalnik, but he could not recall his reason for doing so. (Dkt. 69, pp. 90-91). Although this Court found that the Florida Supreme Court's resolution of this claim was "neither an unreasonable

application of controlling Supreme Court precedent nor an unreasonable determination of the facts," and that Petitioner had not established, assuming an actual conflict existed, that any conflict "adversely affected" Koch's performance, reasonable jurists could debate that determination.

**Grounds N(a) & N(b):** In this claim, Petitioner contends that his state court appellate counsel was ineffective in failing to challenge the denial of a continuance and the admission of lack of remorse evidence. As for the denial of the requested continuance, the Florida Supreme Court rejected this contention, finding that since the underlying claim lacked merit, appellate counsel was not ineffective in failing to raise a meritless claim on appeal. *Cooper v. State*, 856 So.2d at 977-80.

A certificate of appealability on this claim is DENIED, as reasonable jurists would not debate this Court's determination that the Florida Supreme Court's resolution of this claim was neither contrary to, nor an unreasonable application of, the *Strickland* standard." (Dkt. 69, pp. 123-128).

As for Petitioner's claim that his appellate counsel was ineffective in failing to raise as an issue on appeal the improper admission of "lack of remorse" evidence, Petitioner likewise did not demonstrate that the Florida Supreme Court's resolution of this claim was contrary to or an unreasonable application of Supreme Court precedent. In rejecting this claim, the Florida Supreme Court acknowledged that it was error for the State to introduce evidence that Petitioner lacked remorse and that appellate counsel's failure to "assert this point on appeal may constitute less than proper performance." *Cooper v. State*, 856 So. 2d at 978. That court found, however, that "Cooper cannot demonstrate prejudice, because he introduced evidence during the penalty phase in an attempt to show his remorse for the killings." *Id*.

This Court found that the Florida Supreme Court's finding that Petitioner did not satisfy the prejudice prong of *Strickland's* ineffective assistance test was "neither contrary to, nor an

11

unreasonable application of" S*trickland*. (Dkt. 69, p. 128). A certificate of appealability on this claim is DENIED, as reasonable jurists would not debate this Court's determination.

**Ground O:** A COA is DENIED on this claim, as reasonable jurists would not find this Court's resolution of the claim debatable or wrong, considering precedent in this Circuit. *See Thompson v. Sec'y, Dep't of Corr.*, 517 F.3d 1279, 1283-84 (11th Cir. 2008).

Accordingly, it is **ORDERED**:

1. Petitioner's Motion for Certificate of Appealability to the United States Court of Appeals (Dkt. 76) is **GRANTED** in part and otherwise **DENIED**, as provided herein.

2. Petitioner's Motion to Appeal *In Forma Pauperis* (Dkt. 77) is **GRANTED.**

**DONE AND ORDERED** this 24th day of June, 2009.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
All Parties/Counsel of Record